## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **COUNTRY CARPET, INC.,** | |
| **Plaintiff,** | **Case No. 23-4101-DDC-BGS** |
| **v.** | |
| **KANSAS BUILDING TRADES OPEN END HEALTH AND WELFARE TRUST FUND, TRUSTEES, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Country Carpet, Inc. sued two defendants—Kansas Building Trades Open Health and Welfare Trust Fund, Trustees (KBT), and District Council 3 and Local Union 2014, International Union of Painters and Allied Trades of Greater Kansas City and Vicinity (the Union)—in Kansas state court.  Highly summarized, the parties dispute whether plaintiff must pay assessments to KBT for one of plaintiff's employees who left the Union.  Plaintiff argues it doesn't need to pay KBT assessments and brought two claims:  one for declaratory judgment and one for unjust enrichment.

Defendants jointly removed the case to this court.  Doc. 1.  They argue that this federal court has subject matter jurisdiction because two laws—the Labor Management Relations Act (LMRA) and the Employee Retirement Income Security Act (ERISA)—completely preempt plaintiff's state law claims.  *Id.*  Plaintiff disagrees.  It argues that defendants rely on improper argument and have twisted its state law claims into unrecognizable knots, trying to turn them into federal claims.  And so, plaintiff has moved to remand.  Doc. 6.

This Order denies plaintiff's Motion to Remand (Doc. 6).  Plaintiff's Petition relies on the Kansas Constitution—but just in part.  At bottom, plaintiff's claims require the court to interpret the collective bargaining agreement (CBA).  So, those claims are completely preempted by the LMRA, and the court thus has jurisdiction to hear this case.

Both defendants also moved to dismiss the Petition[1] for failure to state a claim upon which relief can be granted.  Doc. 9; Doc. 11.  The court grants each of these motions against plaintiff's completely preempted claims.  The court declines to exercise supplemental jurisdiction over plaintiff's surviving state law claims and remands them to Kansas state court.

The court explains these decisions, below.

## I.      Background

Plaintiff is a family run, floor laying business.  Doc. 1-1 at 6 (Pet. ¶ 8).  The Union is a labor union that provides labor for painters and allied trades.  *Id.* at 3 (Pet ¶ 3).  It represents about 20 members in Kansas, and most of them provide labor to plaintiff.  *Id.*  Plaintiff and the Union are parties to a CBA.  *Id.* at 6 (Pet. ¶ 10).  The CBA obligates plaintiff to pay an assessment to defendant KBT, a union fund that receives contributions from companies who utilize labor through the Union.  *Id.* at 3, 6 (Pet. ¶¶ 2, 11.a.).

In January 2023, plaintiff gave timely, written notice to the Union that it wanted to re-negotiate the CBA's terms.  *Id.* at 8 (Pet. ¶ 16); *see also* Doc. 1-4 (Pet. Ex. C).  The CBA was set to expire on March 31, 2023.  Doc. 1-1 at 6 (Pet. ¶ 10).  Plaintiff's notice explained that plaintiff wanted to change, among other provisions, the CBA's terms about defendant KBT.  *Id.* at 8 (Pet.

---

[1]      In Kansas state courts, the initial pleading is called a petition, not a complaint.

¶ 16).  The Union had a duty to notify KBT of plaintiff's intent to renegotiate the CBA's terms referencing KBT.  *Id.*[2]  But the Union didn't notify KBT.  *Id.*

The CBA expired on March 31, 2023.  *Id.* at 6 (Pet. ¶ 10).  The next day, April 1, 2023, one of plaintiff's employees—T.H.—withdrew from the Union.  *Id.* at 8 (Pet. ¶ 18).  T.H. has continued to work for plaintiff as a non-union employee.  *Id.*  Also on April 1, plaintiff notified KBT that T.H. had withdrawn from the Union and that T.H. no longer would use KBT's services.  *Id.* at 9 (Pet. ¶ 23).  KBT told plaintiff that cancelling KBT's services required a 60-day Notice of Termination.  *Id.* (Pet. ¶ 24).  Plaintiff gave KBT a written Notice of Termination for all clerical and management employees and T.H.—who plaintiff identified separately—on April 3, 2023.  *Id.* at 9–10 (Pet. ¶¶ 25, 26).  KBT also informed plaintiff that the Union hadn't forwarded plaintiff's January 2023 notice of intent to renegotiate the terms of the CBA's provisions governing contributions to KBT.  *Id.* at 10 (Pet. ¶ 28).

KBT continued to assess plaintiff for all clerical and management employees and T.H. for 60 days after plaintiff's April 3 letter.  *Id.* (Pet. ¶ 29).  Plaintiff paid the full assessment for these employees for the additional 60 days, despite not using KBT's services.  *Id.* (Pet. ¶ 31).  After those 60 days expired, plaintiff stopped paying assessments for all clerical and management employees and T.H.  *Id.* (Pet. ¶ 32).  But KBT demanded plaintiff continue to pay for T.H.  *Id.* (Pet. ¶ 33).  KBT told plaintiff that T.H. can't withdraw from KBT.  *Id.* (Pet. ¶ 34).  And so, KBT told plaintiff that it can't stop paying T.H.'s assessment to KBT, even though T.H. had withdrawn from the Union and no longer uses KBT's services.  *Id.* at 11 (Pet. ¶ 36).

---

[2]       The Petition doesn't specify the source of that duty precisely.  Instead, it alleges that "[u]nder the explicit and implied terms of the Union contract, the Union had a duty to administer the contractual rights and obligations related to the payments to KBT[.]"  Doc. 1-1 at 8 (Pet. ¶ 13).  It goes on to claim that "[t]he Defendant Union had a duty to notify KBT of Country Carpet's notice of intent to re-negotiate the terms of the Union contract related to KBT."  *Id.* (Pet. ¶ 16).

Plaintiff has continued to pay the assessment for T.H. *Id.* (Pet. ¶ 39). KBT has threatened plaintiff with more assessments, penalties, and collections. *Id.* In total, plaintiff has paid over $11,000 in additional assessments to KBT. *Id.* (Pet. ¶ 40). This $11,000 comes from KBT's refusal to accept plaintiff's notice to the Union, refusal to accept plaintiff's notice of termination, and refusal to allow T.H. to terminate his Union association and discontinue services. *Id.*

The court pauses here to clarify something about plaintiff's contracts with defendants. Plaintiff and the Union are parties to the CBA. *Id.* at 6 (Pet. ¶ 10); Doc. 1-3 (Pet. Ex. B). The CBA obligates plaintiff to pay an assessment to KBT for plaintiff's employees covered by the CBA—including T.H. Doc. 1-1 at 6 (Pet. ¶ 11.a.). And, according to KBT, plaintiff and KBT entered into a *separate* agreement that governs plaintiff's managerial and clerical employees— whom the CBA doesn't cover. *Id.* at 9 (Pet. ¶¶ 19–20); Doc. 1-2 at 3–6 (Pet. Ex. A). The court refers to this second contract as the "non-bargained agreement." Plaintiff's claims invoke both the CBA and the non-bargained agreement.

Plaintiff's Petition brings two claims. The first—couched as a single claim for declaratory judgment—seeks more than 15 distinct declarations. Doc. 1-1 at 15–19 (Pet. ¶¶ 65– 87). More on those many declarations later. The second claim is an unjust enrichment claim. *Id.* at 19–20 (Pet. ¶¶ 88–101).

## II.      Motion to Remand

The court begins—as it must—with subject matter jurisdiction. In support of its Motion to Remand (Doc. 6), plaintiff argues this court lacks jurisdiction and should remand this case to state court. The Union and KBT, for their part, contend that plaintiff's Petition raises federal questions and that the court's jurisdiction is proper.

## A.  Legal Standard

"'Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction.'"  *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (quoting *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)).  Under 28 U.S.C. § 1441, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]"  28 U.S.C. § 1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (explaining that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant").  "'This jurisdictional prerequisite to removal is an absolute, non-waivable requirement.'"  *Hunt v. Lamb*, 427 F.3d 725, 726 (10th Cir. 2005) (quoting *Brown v. Francis*, 75 F.3d 860, 864 (3d Cir. 1996)).

Two federal statutes confer subject matter jurisdiction on federal district courts:  federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332.  Defendants' Notice of Removal invokes federal question jurisdiction.  Doc. 1 at 2–3.  For a federal court to have federal question jurisdiction over a lawsuit, its plaintiff must assert a "civil action[] arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This case isn't a typical federal question case, however.  That's so because, on its face, plaintiff's Petition asserts just state law claims.  And the "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar*, 482 U.S. at 392.

Defendants nonetheless assert that this federal court has jurisdiction under the doctrine of preemption.  "Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint."  *Id.*  And so "a case may *not* be removed to federal court on the basis of a

federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint[.]" *Id.* at 393 (emphasis in original).  But there's an exception—or, to the use the Supreme Court's term, an "independent corollary"—to the well-pleaded complaint rule: complete preemption.  *Id.*  Complete preemption is a jurisdictional doctrine that allows a defendant to remove a state claim to federal court "when a federal statute wholly displaces the state-law cause of action[.]"  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).  Put differently, "'complete preemption' refers to the replacement of a state cause of action with a federal one."  *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  *Caterpillar*, 482 U.S. at 393.

### B.  Analysis

Defendants argue complete preemption based on two federal statues:  (1) § 301 of the LMRA and (2) ERISA.  Doc. 1.  The court concludes that § 301 of the LMRA completely preempts some of plaintiff's claims.  That conclusion suffices for the court to exercise jurisdiction, even though ERISA doesn't completely preempt any of plaintiff's claims.  The court's subject matter jurisdiction analysis begins with a threshold issue:  whether on a motion to remand defendants can present evidence outside plaintiff's Petition.

#### 1.  Outside-the-Petition Evidence

Plaintiff asks the court to reject defendants' complete preemption argument and remand the case because the CBA has terminated, and defendants' federal rights have terminated with it.  Doc. 7 at 4–6.  Defendants argue that isn't the whole story.  Defendants have submitted evidence—in the form of affidavits and payment records—showing that plaintiff has continued to pay assessments to KBT as required by the CBA.  Doc. 25 at 8; *see also* Doc. 24-1 at 2

(Muckenthaler Aff. ¶ 6); Doc. 24-3 at 1 (Rodgers Aff. ¶ 5).  So, defendants argue, plaintiff has engaged in a course of conduct that manifests an intent to continue to follow the CBA.  Doc. 25 at 8–9.  Plaintiff responds that the court can't consider this evidence because it's not referenced in the Petition.  Plaintiff is right.

The Supreme Court's decision in *Caterpillar* bars the court from considering the evidence defendants have submitted.  In *Caterpillar*, plaintiffs brought state law breach of contract claims, arguing that their employer had breached an oral employment contract with each plaintiff.  482 U.S. at 389–90.  The defendant employer removed to federal court, arguing that any individual employment contract made with plaintiffs was superseded by a collective bargaining agreement.  *Id.* at 390.  The Court rejected defendants' argument, explaining that defendant "impermissibly attempt[ed] to create the prerequisites to removal by ignoring the set of facts (*i.e.*, the individual employment contracts) presented by [plaintiffs], along with their legal characterization of those facts, and arguing that there are different facts [plaintiffs] might have alleged that would have constituted a federal claim."  *Id.* at 396–97.  The Court emphasized that plaintiff's lawsuit had relied on the individual employment contracts—not a collective bargaining agreement.  *Id.* at 397.  And so the *Caterpillar* defendant was wrong "to justify removal on the basis of facts not alleged in the complaint."  *Id.*

That's exactly what defendants have done here:  they've "attempt[ed] to justify removal on the basis of facts not alleged in the" Petition.  *Id.*  Plaintiff asks the court to ignore this extraneous evidence.  And defendants haven't proffered any legal authority supporting their view that the court can consider this evidence.  The court thus won't consider defendants' evidence about plaintiff's conduct after the CBA had expired.

### 2.  LMRA Preemption

#### a.  Declaratory Relief[3]

Defendants argue that the LMRA completely preempts plaintiff's state law claims and thus confers subject matter jurisdiction on our court.  Section 301 of the LMRA provides that suits "for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties[.]"  29 U.S.C. § 185(a).  The Supreme Court has explained "that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (quotation cleaned up).  And "§ 301 establishes a 'congressional mandate to the federal courts to fashion a body of federal common law to be used to address

---

[3]      Determining whether a state law claim is completely preempted requires the court to evaluate the elements of the cause of action. *Melton v. Bell Textron, Inc.*, 655 F. Supp. 3d 510, 516 (N.D. Tex. 2023). This determination, in turn, requires the court to identify the governing law.  No party engaged in a choice of law analysis.  "The Court applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim." *Nordwald v. Brightlink Commc'ns, LLC*, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  This is so whether the court exercises diversity or supplemental jurisdiction. *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1416, 1420 (D. Kan. 1998) (citation omitted).  So, the court applies Kansas's choice of law rules.  Because no party has made a "clear showing that another state's law should apply[,]" the court applies Kansas substantive law. *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007).

        And though plaintiff's Petition asks for a declaratory judgment under Kan. Stat. Ann. § 60-1701, the federal "Declaratory Judgment Act provides the framework for whether the court should exercise jurisdiction over a claim for declaratory relief." *Monahan v. Crestbrook Ins. Co.*, No. 23-2457-JWB, 2024 WL 68376, at *1 (D. Kan. Jan. 5, 2024); *see also Coates v. Ashley Bldg. Corp.*, No. 23-cv-02142-HLT-ADM, 2023 WL 6976056, at *4 n.4 (D. Kan. Oct. 23, 2023) ("Plaintiff brings Count III under the Kansas declaratory judgment act instead of the federal Declaratory Judgment Act.  But federal courts asked to provide declaratory relief utilize the federal Declaratory Judgment Act to do so."); *Bd. of Cnty. Comm'rs of Cnty. of Marshall v. Cont'l W. Ins. Co.*, 184 F. Supp. 2d 1117, 1120 (D. Kan. 2001) ("Because the Declaratory Judgment Act is procedural in nature, federal law determines whether or not a district court may properly exercise its discretion to hear a claim for declaratory relief. . . .  This is true, even where, as in this case, a claim for declaratory relief originates in state court[.]" (citations omitted)). So, where relevant, the court applies the federal Declaratory Judgment Act, not the Kansas declaratory judgment act.

disputes *arising out of* labor contracts.'"  *Garley v. Sandia Corp.*, 236 F.3d 1200, 1208 (10th Cir. 2001) (emphasis added) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)).

The LMRA can preempt a claim in two ways.  *First*, the LMRA "governs claims founded directly on rights created by collective-bargaining agreements[.]"  *Caterpillar*, 482 U.S. at 394. *Second*, the LMRA completely preempts "claims substantially dependent on analysis of a collective-bargaining agreement."  *Id.* (quotation cleaned up).  That is, "the Supreme Court extended this rule beyond breach of contract claims, stating that 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law[.]'" *Rael v. Smith's Food & Drug Ctrs., Inc.*, 712 F. App'x 802, 804 (10th Cir. 2017) (quoting *Allis-Chalmers*, 471 U.S. at 210).  But not all claims involving a CBA are preempted.  "When the parties do not dispute the meaning of the contract terms, 'the bare fact that a CBA will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'"  *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1164 (10th Cir. 2004) (quotation cleaned up) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).  That is, those claims that require "interpretation of CBA terms" come within § 301's preemptive scope; those claims that "involve[] mere reference to [CBA] terms" do not.  *Id.*; *see also Lingle v. Norge Div. of Magic Chef, Inc.* 486 U.S. 399, 413 (1988) ("In sum, we hold that an application of state law is pre-empted by § 301 . . . only if such application requires the interpretation of a collective bargaining agreement.").

Some of plaintiff's declaratory relief requests here are preempted by § 301 because they require the court to interpret the CBA.  The crux of plaintiff's claim centers on an allegation that "KBT is using *the Union contract*, and penalties and assessments *contained therein* to charge

Country Carpet assessments related to T.H." Doc. 1-1 at 15 (Pet. ¶ 66) (emphasis added). And plaintiff asserts that the Union is a proper party because KBT based its assessments of T.H. on "the *Union's Contract* with Country Carpet." *Id.* (Pet. ¶ 67) (emphasis added). Plaintiff's specific requests for declaratory relief underscore this conclusion. Plaintiff asks the court to declare the following:

- The "amounts which KBT and/or Union should be required to repay to Country Carpet for the assessments related to T.H. after he withdrew from the union, and for the administrative and management employees of Country Carpet." *Id.* at 17 (Pet. ¶ 78).

- The "duties and obligations of the Defendant Union after receiving Country Carpet's notice on or about January 23, 2023 seeking to renegotiate the terms of the agreement." *Id.* (Pet. ¶ 80).

- The "duty and obligation of the Defendant Union to notify KBT of Country Carpet's January 23, 2023 letter seeking to renegotiate the terms." *Id.* (Pet. ¶ 81).

- "Country Carpet's duties to pay assessments to recruit, train and/or supervise employees who have withdrawn from the Union." *Id.* (Pet. ¶ 82).

These declarations each require the court to interpret the CBA. Indeed, the court can determine the "duties and obligations" of the parties only by interpreting the CBA. *See id.* (Pet. ¶¶ 80, 81). And, as far as plaintiff's Petition alleges, the sole legal instrument connecting the Union to plaintiff is the CBA. So, the court must interpret that contract to deduce what duties—if any—plaintiff has to pay assessments to the Union. In short, some of the relief sought by plaintiff's Petition requires the court to interpret the CBA to determine the relationship between the parties and decide "what legal consequences were intended to flow" from the CBA. *See Rael*, 712 F. App'x at 804. That's enough for § 301 complete preemption. The court thus has subject matter jurisdiction over plaintiff's Petition under the independent corollary to the well-pleaded complaint rule. Removal is proper.

Hoping to defeat removal, plaintiff argues that its declaratory judgment claim solely invokes the Kansas Constitution—specifically the right-to-work clause.  Doc. 7 at 7.  Unfortunately for plaintiff, that's just partly true.  Plaintiff's declaratory judgment claim, as mentioned already, seeks many declarations.  Many invoke the Kansas Constitution or other state laws.  But federal jurisdiction over a single request for declaratory relief suffices to support removal jurisdiction.  *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1138 (10th Cir. 2014) ("Although we have concluded that most of [plaintiff's] claims are not preempted, federal jurisdiction over any one claim is sufficient to support removal.").

Plaintiff also argues that § 301 doesn't preempt nonnegotiable state law rights.  Doc. 7 at 6–7.  That's true—generally.  *Karnes v. Boeing Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003) ("[T]he Supreme Court has 'underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" (quoting *Livadas*, 512 U.S. at 123)).  But the Supreme Court has clarified.  Whether a claim turns on interpretation of a CBA—not whether the right is nonnegotiable—is what's dispositive.  *Lingle*, 486 U.S. at 407 n.7 ("It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application.  Such a remedy would be pre-empted by § 301.").  And while part of plaintiff's claim is predicated on the right-to-work provision in Kansas's constitution—which ostensibly creates a nonnegotiable state law right—other parts of the Petition, as discussed above, ask the court to determine the parties' contractual rights and duties.  That determination necessarily involves interpretation of the CBA.

### b.    Unjust Enrichment

Plaintiff brings an unjust enrichment claim against defendant KBT.  As explained above, if plaintiff's claim requires the court to interpret the CBA, it is completely preempted.  *Felix*, 387

F.3d at 1164.  If, however, plaintiff's claim merely requires the court to reference the CBA, it isn't completely preempted.  *Id.*  The question, then, is whether plaintiff's unjust enrichment claim here requires the court to interpret or merely consult the CBA.

To answer this question, the court examines the elements of the claim.  Under Kansas law, an unjust enrichment claim has three elements:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Superlative Grp., Inc. v. WIHO, L.L.C.*, No. 12-1468-JWL, 2014 WL 1385533, at *4 (D. Kan. Apr. 9, 2014) (internal citations and quotation marks omitted).  The third element is the one invoking the CBA.

Here, plaintiff's unjust enrichment claim alleges KBT has refused to allow plaintiff to cancel KBT's services for T.H.  Doc. 1-1 at 19 (Pet. ¶ 93).  The unjust enrichment claim provides, "KBT continues to collect from Country Carpet for services that are not needed and are not used by Country Carpet, or T.H. or Country Carpet's non-union employees."  *Id.* (Pet. ¶ 94). And so, according to plaintiff's Petition, the "value of the unjust benefit conferred upon KBT is the amount of money that KBT continued to collect after T.H. withdrew from the union and after the clerical and management employees no longer used KBT services."  *Id.* at 20 (Pet. ¶ 100).

The CBA provides the basis for plaintiff's unjust enrichment claim.  The Petition makes this much clear.  It alleges:  "KBT claims that the agency shop contract between Country Carpet and the Union requires Country Carpet to pay assessments for T.H. despite his attempt to withdraw from both the Union and KBT."  Doc. 1-1 at 13 (Pet. ¶ 51).  So, to determine whether KBT is entitled to collect payments from plaintiff "depends upon the meaning of a collective bargaining agreement[.]"  *Lingle*, 486 U.S. at 406.

Think of it this way:  plaintiff maintains that the relevant contracts have expired.  And yet, according to plaintiff's Petition, plaintiff has continued to pay KBT.  The court needs to figure out *why* plaintiff has continued to pay KBT even though the contracts have expired.  And one of those contracts is the CBA.  The court thus will have to interpret the CBA to decide the unjust enrichment claim.  And so plaintiff's unjust enrichment claim is completely preempted. *See, e.g.*, *Moon v. Goodyear Tire & Rubber Co.*, 519 F. App'x 620, 623–24 (11th Cir. 2013) (finding plaintiff's state law unjust enrichment claim preempted where collective bargaining agreement was source of benefit sought by plaintiff); *Cefarrati v. JBG Props., Inc.*, 75 F. Supp. 3d 58, 66 (D.D.C. 2014) (noting that "unjust enrichment claims are often completely preempted" because they "may depend importantly upon what the CBA provides" (quotation cleaned up)).

### c.      Effect of Expiration

Plaintiff's opposition of the motion makes much of the CBA's expiration.  Doc. 7 at 5–10.  According to plaintiff, this case doesn't involve any obligation arising before the CBA expired.  And, plaintiff argues, Tenth Circuit precedent doesn't allow federal courts to enforce expired collective bargaining agreements unless the obligation at issue arose before the agreement expired.  But plaintiff's answering the wrong question.  The relevant test for LMRA preemption doesn't ask whether the court must *enforce* the CBA.  Instead, it asks whether the court must *interpret* the CBA to resolve plaintiff's claim.  That's the difference between the two forms of LMRA preemption identified in *Caterpillar*:  "Section 301 governs [1] claims founded directly on rights created by collective-bargaining agreements, and also [2] claims substantially dependent on analysis of a collective-bargaining agreement."  482 U.S. at 394 (quotation cleaned up).

To be sure, some federal courts have found no preemption jurisdiction under § 301 of the LMRA when a party tries to enforce an expired CBA.  *See, e.g.*, *Derrico v. Sheehan Emergency*

*Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988) ("Therefore, after expiration of the CBA there is no contract subject to section 301 and there can be neither removal jurisdiction nor preemption under section 301."); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 599 (E.D.N.Y. 2007) ("Indeed, § 301's sweeping preemptive force applies 'only where state law claims coincide with *current* collective bargaining agreements.'" (emphasis in original) (quoting *Derrico*, 844 F.2d at 25)).

But these cases don't alter the court's conclusion that jurisdiction is proper here. Three reasons lead the court to this result. *First*, plaintiff's Petition requests two declarations about conduct *before* the CBA expired. The Petition requests a declaration about "the duties and obligations of Defendant Union" after receiving its notice on "January 23, 2023 seeking to renegotiate the terms of the agreement." Doc. 1-1 at 17 (Pet. ¶ 80). And it likewise requests a declaration about the Union's duty to notify KBT of plaintiff's January 23 letter. *Id.* (Pet. ¶ 81). The CBA didn't expire until March 31, 2023. *Id.* at 11 (Pet. ¶ 38). So, both of these requests for declarations require the court to interpret the *unexpired* CBA and determine its legal effect.[4] This proposition settles the debate. There's simply no way the court can determine the "duties and obligations" of the Union without interpreting the CBA.

*Second*, the cases cited above involved workers asserting claims against employers for violating the expired CBA. *See Derrico*, 844 F.2d at 23; *Levy*, 498 F. Supp. 2d at 588–89. And *Derrico* emphasized that the individual nature of the plaintiff's claims was important to its holding that it lacked § 301 jurisdiction. 844 F.2d at 25–26 (noting that plaintiff alleged "an *individual* employment contract" but that "Section 301 grants jurisdiction . . . only over suits for

---

[4]      Plaintiff's response to the Union's Motion to Dismiss declares that "no part of this case relates to obligations that arose prior to the expiration of the collective bargaining agreement." Doc. 22 at 6. As explained, however, that's not accurate.

breach of contracts between an employer and a labor organization." (emphasis in original and quotation cleaned up)); *see also Rothchild v. Madison Square Garden, L.P.*, 487 F. Supp. 2d 421, 423–24 (S.D.N.Y. 2007) (finding § 301 jurisdiction over dispute after CBA expired because plaintiff alleged violation of implied contract between employer and labor union). Here, in contrast, plaintiff—a party to the CBA—is asserting claims against the Union, another party to the CBA.

*Third*, those cases don't bind this court. Our Circuit—guided by Supreme Court precedent—explicitly has instructed that "claim[s] that involve[] interpretation of CBA terms" are completely preempted by § 301. *Felix*, 387 F.3d at 1164. The court is bound by the Circuit's command. Plaintiff's Petition asks the court to ascertain the legal relationship between the parties. Because the only instrument that creates a relationship between the parties—as alleged in plaintiff's Petition—is the CBA, the court must interpret the CBA, even if it's expired. *Cf. Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 249 (1977) ("The dispute therefore, although arising after the expiration of the collective-bargaining contract, clearly arises under that contract."). So, at minimum, plaintiff's four requests for declaratory relief that invoke the CBA and its unjust enrichment claim are completely preempted. And this gives rise to subject matter jurisdiction.

To give full credence to plaintiff's argument, however, the court addresses a final thrust plaintiff invokes to oppose federal jurisdiction. Plaintiff relies heavily on *Litton Financial Printing Division v. NLRB* for the argument that "termination of the labor agreement is determinative of federal rights." Doc. 7 at 5, 9 (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)). To understand *Litton* requires a short explanation about the "unilateral change doctrine." Sometimes, a CBA expires while the parties still are negotiating a new CBA. If that's

the case, an employer can't "effect[] a unilateral change of an existing term or condition of employment" "without bargaining to an impasse[.]"  *Litton*, 501 U.S. at 198.  That is, the employer must continue to bargain and must maintain the status quo as dictated by the CBA.  For example, if the CBA requires the employer to arbitrate disputes and the CBA expires while the parties still are bargaining, then the employer must continue to arbitrate disputes—even after the CBA expires.  *Id.* at 199 ("[A]rrangements for arbitration of disputes are a term or condition of employment and a mandatory subject of bargaining.").  But, according to the NLRB, not all CBA terms survive the CBA's expiration.  *Litton* explained that "it is the [NLRB]'s view that union security and dues check-off provisions are excluded from the unilateral change doctrine[.]" *Id.*  Plaintiff argues that this conclusion shows that this court doesn't have jurisdiction over this dispute.

*Litton* doesn't supply the silver bullet plaintiff hopes for it to provide.  As an initial matter, that case occupied a very different procedural posture:  the NLRB itself sought to enforce an order requiring arbitration.  *Id.* at 195.  So, subject matter jurisdiction wasn't at issue there. Here, plaintiff has focused solely on the CBA itself.  Even if the CBA has expired—and the dues provisions with it—plaintiff's claims still substantially depend on an analysis of the CBA. What's more, *Litton* explained that a contract can continue to have force after its expiration when parties have outstanding obligations under the contract.  501 U.S. at 206 ("[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, *except obligations already fixed under the contract but as yet unsatisfied*." (emphasis added)).  Here, the court must consult and interpret the CBA to determine whether the parties have outstanding contractual obligations.  And, to determine the "duties and obligations" of the Union after

January 23, 2023, the court must interpret the CBA.  So, plaintiff is mistaken when it assumes that the CBA's termination is determinative of federal rights.

Plaintiff also relies on *Laborers Health and Welfare Trust Fund for Northern California* for its argument that this court doesn't have subject matter jurisdiction.  Doc. 7 at 5, 7 (citing *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539 (1988)).  According to plaintiff, this case stands for the proposition "that benefits contributions disagreements that derive after termination of the agreement are not a basis for jurisdiction in federal courts."  Doc. 7 at 5 (emphases omitted).  But the question in that case wasn't one centered on LMRA § 301 preemption.  It was about ERISA provisions.  *Laborers Health & Welfare*, 484 U.S. at 541.

Some brief background about ERISA helps explain *Laborers Health & Welfare* and why it doesn't apply here.  ERISA requires employers who leave multiemployer funds to continue to contribute to the fund under certain circumstances.  *Id.* at 545–46.  ERISA also requires employers to make contributions that they promise to make.  *Id.* at 546–47.  Congress created certain ERISA provisions allowing plan trustees to sue in federal court to collect against employers who are delinquent in making contributions.  *Id.* at 547.  Against this ERISA backdrop, *Laborers Health & Welfare* asked whether this ERISA jurisdictional provision conferred subject matter jurisdiction on federal courts "to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA."  *Id.* at 549.  Put differently, if fund trustees sue an employer to recover delinquent contributions owed under a *collective bargaining agreement*, do *ERISA's* delinquent contribution enforcement provisions provide the federal court with jurisdiction?  The Supreme Court answered no.

17

This holding doesn't apply here because defendants aren't claiming that this court has subject matter jurisdiction under the ERISA provisions from *Laborers Health & Welfare*. Instead, the court merely evaluates and invokes LMRA § 301 preemption. And the relevant question for § 301 preemption is whether the court must interpret the CBA to resolve plaintiff's claims. So, the court's jurisdiction is proper even though the CBA here has expired.[5]

In sum, plaintiff's claims require the court to interpret the CBA. So, § 301 of the LMRA completely preempts those claims, and the court's subject matter jurisdiction is proper.

### 3. ERISA Preemption

Defendants' Notice of Removal (Doc. 1) invokes ERISA preemption as an alternative basis for removal. Doc. 1 at 5–6. Along with the LMRA, ERISA is one of the "few federal statutes that so pervasively regulate their respective areas that they have complete preemptive force[.]" *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011). A "state-law suit that falls within the scope of" § 502(a) of ERISA "may be removed to federal court via complete preemption." *Id.* This principle means that "if an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502 (a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). So, the court must determine whether plaintiff could have brought any of its claims under ERISA § 502.

---

[5] To support its Motion to Dismiss (Doc. 9), the Union argues that plaintiff's conduct as alleged in the Petition—particularly the continuing to pay contributions to KBT for its union members—manifests "an intent to remain bound" by the CBA. Doc. 10 at 8. And so, the Union contends, "there is an enforceable Section 301 agreement between the parties." *Id.* The court needn't consider this argument because plaintiff's Petition here asks the court to interpret the CBA, even if there isn't a presently enforceable agreement between the parties.

Here, plaintiff's claims aren't completely preempted under ERISA because ERISA § 502 doesn't provide a cause of action for employers.  *E.g.*, *BAC Local Union 15 Welfare Fund v. McGill Restoration, Inc.*, No. 16-2082-JAR-TJJ, 2016 WL 6905721, at *3 (D. Kan. Nov. 23, 2016) (compiling cases and finding that it "appears settled that ERISA does not provide an employer with a private right of action"); *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trs.*, 954 F.2d 299, 303 (5th Cir. 1992) ("Thus, we hold, as a number of our colleagues in other Circuits have, that employers do not have a private right of action under ERISA." (footnote omitted)); *Whitworth Bros. Storage Co. v. Central States, Se. & Sw. Areas Pension Fund*, 794 F.2d 221, 228 (6th Cir. 1986) ("[T]he aforementioned authorities and the plain language of the statute make clear that Congress intended . . . that ERISA does not provide for an action by an employer against a fund for a refund of contributions."); *Dime Coal Co., Inc. v. Combs*, 796 F.2d 394, 397–98 (11th Cir. 1986) (finding no cause of action under ERISA for employer to recover contributions).

Citing a Ninth Circuit case, KBT argues that ERISA § 502 implies a cause of action for employers to recover overpaid contributions.  Doc. 24 at 9–10 (citing *Award Srv., Inc. v. N. Cal. Retail Clerks Union & Food Emps. Joint Pension Tr. Fund*, 763 F.2d 1066 (9th Cir. 1985)).  In *Award Service*, the Ninth Circuit held that an employer can bring suit for repayment of overcontributions under ERISA § 502.  763 F.2d at 1067–68.  Our Circuit hasn't decided this issue.  But where, as here, "clear Tenth Circuit precedent" is absent, this court "follows the majority of other circuit courts[.]"  *BAC Local Union 15*, 2016 WL 6905721, at *4.  And, as established above, the weight of circuit authority counsels that employers can't bring a cause of action under ERISA § 502.

So, the court concludes, plaintiff couldn't have brought this action under ERISA § 502. ERISA thus doesn't completely preempt plaintiff's claims.

### 4. Conclusion

Some of plaintiff's claims are completely preempted by § 301 of the LMRA.  This conclusion means jurisdiction is proper in federal court.  *See Salzer*, 762 F.3d at 1138 ("[F]ederal jurisdiction over any one claim is sufficient to support removal."); *Elliott v. Tulsa Cement, LLC*, 357 F. Supp. 3d 1141, 1151 (N.D. Okla. 2019) ("Federal question jurisdiction exists even if federal law preempts only one of Plaintiffs' state-law claims." (quotation cleaned up)).  The court thus denies plaintiff's Motion to Remand (Doc. 6).  And the court also denies plaintiff's request for attorney fees.  *See* 28 U.S.C. § 1447(c) (instructing that a court may order attorney fees in order remanding case).

## III.    Motion to Dismiss

The court now turns to defendants' Motions to Dismiss.  Doc. 9; Doc. 11.  The Union and KBT ask the court to dismiss plaintiff's Petition under Fed. R. Civ. P. 12(b)(6).  Doc. 9; Doc. 11. The court grants these motions but only against plaintiff's completely preempted claims, as identified and explained below.

### A.    Legal Standard

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S.

20

at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S.

at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir.

2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible

that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual

allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion

couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands

more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.*

(quoting *Twombly*, 550 U.S. at 555).

### B.  Analysis

In support of its Motion to Dismiss (Doc. 9), the Union argues that plaintiff's claims

against the Union are completely preempted by § 301 of the LMRA and they thus fail to state a

claim upon which relief can be granted even if the court construes them under federal law.  Doc.

10 at 8–11.

As discussed above, *see* § II.B.2, the court concludes that some of plaintiff's claims are

completely preempted by § 301 of the LMRA.  "When a party's state law claims are preempted

under § 301, the court must either dismiss the claims as preempted or treat them as arising under

§ 301." *McCrary v. Aurora Pub. Schs.*, 57 F. App'x 362, 374 (10th Cir. 2003) (citing *Allis-*

*Chalmers*, 471 U.S. at 221).  Because the court assumes jurisdiction under complete preemption,

it elects to construe plaintiff's claims as ones arising under § 301.  *See LaFayette v. Cobb*, 385 F.

Supp. 2d 1152, 1160 (D.N.M. 2004) ("It would be anomalous indeed to permit a defendant to

both remove a case to federal court because the state law cause of action has been converted into a federal claim and then have it dismissed because the area of law into which the plaintiff's claims fall have been preempted by federal law.").  So, the court must evaluate whether the completely preempted claims state viable claims under § 301 of the LMRA.  *See Clay v. United Parcel Serv., Inc.*, 983 F. Supp. 2d 1331, 1346 (D. Kan. 2013) ("Having found that Section 301 preempts Plaintiff's claims, the Court determines whether Plaintiff has stated a claim under that statute.").

Section 301 of the LMRA authorizes suits for breach of contract between a labor organization and an employer.  *See* 29 U.S.C. § 185(a).  Recall that five of plaintiff's claims are completely preempted—the unjust enrichment claim and these four requests for declaratory relief.

- The "amounts which KBT and/or Union should be required to repay to Country Carpet for the assessments related to T.H. after he withdrew from the union, and for the administrative and management employees of Country Carpet." *Id.* at 17 (Pet. ¶ 78).

- The "duties and obligations of the Defendant Union after receiving Country Carpet's notice on or about January 23, 2023 seeking to renegotiate the terms of the agreement." *Id.* (Pet. ¶ 80).

- The "duty and obligation of the Defendant Union to notify KBT of Country Carpet's January 23, 2023 letter seeking to renegotiate the terms." *Id.* (Pet. ¶ 81).

- "Country Carpet's duties to pay assessments to recruit, train and/or supervise employees who have withdrawn from the Union." *Id.* (Pet. ¶ 82).

Below, the court tackles these claims, in turn, determining whether any can state a claim under the LMRA.

### 1. Unjust Enrichment Claim and Declaratory Relief

The court first addresses the unjust enrichment claim—and plaintiff's corresponding request for declaratory relief.[6]  These claims are not viable claims under § 301 of the LMRA. This is so for two reasons.  *First*, and most notably, plaintiff doesn't allege that either defendant was unjustly enriched because of a CBA violation.  And plaintiff itself has made this point emphatically.  *E.g.*, Doc. 22 at 3 & n.1 (arguing that "Defendant does its utter best to recast Plaintiff's claims into a breach of contract" claim but that "Plaintiff's claim does not sound in contract").  Even if plaintiff had alleged a violation of the CBA, plaintiff can't use unjust enrichment as a vehicle to state a contract claim.  *See Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1151 (D. Kan. 2006) (holding that party could not state claim for unjust enrichment to enforce contractual duties).

*Second*, the thrust of the unjust enrichment claim is a claim against KBT.[7]  Because KBT is not a party to the CBA, any claim against it necessarily is not a "[s]uit[] for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a); *see also United Food & Com. Workers Union, Local No. 1564 v. Quality Plus Stores, Inc.*, 961 F.2d 904, 906 (10th Cir. 1992) (concluding that because there "is no collective bargaining agreement between the parties to the action," the "action is not a suit for violation of contracts between an employer

---

[6]    The court interprets ¶ 78 of the Petition as an unjust enrichment claim seeking declaratory relief. *See* Doc. 1-1 at 17 (Pet. ¶ 78) ("[T]he amounts which KBT and/or Union should be required to repay to Country Carpet for the assessments related to T.H. after he withdrew from the union, and for the administrative and management employees of Country Carpet.").

[7]    To be sure, ¶ 78 of the Petition is directed nominally at the Union as well as KBT.  But none of the allegations in the Petition support the inference that the Union owes any repayment to Country Carpet. Regardless, this claim still fails against the Union because plaintiff doesn't allege that the Union violated the CBA, as is required to state a claim under § 301.

and a labor organization" (quotation cleaned up)).  Both of these reasons lead the court to hold that plaintiff's unjust enrichment claims aren't viable under § 301 of the LMRA.

## 2.  The Union's Duties and Obligations

The court next assesses whether plaintiff's requests for declarations about the Union's duties and obligations can state a claim under the LMRA.[8]  The Union contends that plaintiff hasn't alleged that the Union violated the CBA.  Doc. 10 at 9.  And the Union asserts that the CBA didn't obligate the Union to notify KBT of plaintiff's notice seeking to renegotiate the terms of the CBA.  *Id.* at 9–10.  Plaintiff, for its part, reiterates that its claims aren't predicated on the CBA.  Doc. 22 at 8–9.  And plaintiff doesn't contest the Union's position that plaintiff can't state a claim under the LMRA.  *See id.*  But the court concludes that plaintiff can't.

As the court already noted, the Petition isn't clear about the source of the Union's alleged duty to notify KBT.  In two separate paragraphs, the Petition asserts that the "Union had a duty to notify KBT of Country Carpet's notice of intent to re-negotiate the terms of the Union contract related to KBT."  *Id.* at 8 (Pet. ¶ 16); *id.* at 13 (Pet. ¶ 54) ("The Union, had a duty to notify KBT of Country Carpet's notice on January 23, 2023 to renegotiate the terms related to KBT.").  But the Petition never alleges the *source* of that duty, other than a generic assertion alleging that "[u]nder the explicit and implied terms of the Union contract, the Union had a duty to administer the contractual rights and obligations related to the payments to KBT[.]"  Doc. 1-1 at 8 (Pet. ¶ 13).  No provision of the CBA creates any such duty.  *See generally* Doc. 1-3 (Pet. Ex. B).  In

---

[8]     The Petition seeks two declarations about the Union's duties and obligations.  The first seeks a "declaration of the duties and obligations of the Defendant Union after receiving Country Carpet's notice on or about January 23, 2023 seeking to renegotiate the terms of the agreement."  Doc. 1-1 at 17 (Pet. ¶ 80).  The second seeks the court's "declaration of the duty and obligation of the Defendant Union to notify KBT of Country Carpet's January 23, 2023 letter seeking to renegotiate the terms."  *Id.* (Pet. ¶ 81).  But the court concludes these requests are redundant.  The sole allegation in the Petition about the Union's obligation after receiving plaintiff's January 23 letter is that it failed to notify KBT.  *Id.* at 8 (Pet. ¶ 16); *id.* at 13 (Pet. ¶ 54).  So, the court evaluates these two requests together.

fact, the CBA mentions KBT just once. *Id.* at 13 (Pet. Ex. B Art. XII). That lone reference to KBT requires plaintiff to pay KBT $4.75 "per hour for each hour worked or paid for[.]" *Id.* Notably, the part of the CBA that provides notice and termination procedures doesn't reference KBT. *Id.* at 36 (Pet. Ex. B Art. XXXII). And plaintiff cited no provision of the CBA—nor could the court independently find any—creating a duty for the Union to notify KBT of plaintiff's desire to renegotiate the CBA. If plaintiff believed that some part of the CBA created an implied duty on the Union, plaintiff's allegations should have referenced it because the "court cannot be expected to read litigants' minds." *Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1142 (10th Cir. 2024) (quotation cleaned up). The court concludes that the CBA doesn't impose this duty on the Union. Plaintiff thus cannot state a claim for relief under LMRA § 301 about the Union's duties to notify KBT.

Plaintiff's response is that the court must take its allegations as true. Doc. 22 at 9. Of course it must. But plaintiff's assertion that the Union had a duty to notify KBT is a bare legal conclusion, which the court is "'not bound to accept as true[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). So, the court concludes that plaintiff's requests for declarations about the Union's duties and obligations can't state claims for relief under § 301 of the LMRA.

The court now moves on to the last of plaintiff's completely preempted claims.

### 3. Plaintiff's Duties and Obligations

The last of plaintiff's completely preempted claims seeks this court's declaration of "Country Carpet's duties to pay assessments to recruit, train and/or supervise employees who have withdrawn from the Union." Doc. 1-1 at 17 (Pet. ¶ 82). The court concludes that this request too fails to state a viable claim under § 301 of the LMRA. Again, plaintiff hasn't alleged that the Union violated the CBA, a necessary prerequisite to bringing suit under § 301. To be sure, declaratory relief is available for § 301 claims. *Verizon New England, Inc. v. Int'l Bhd. of Elec.*

*Workers, Local No. 2322*, 651 F.3d 176, 189–90 (1st Cir. 2011) (citing *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 15 (1st Cir. 1994)).  But to access such relief, the plaintiff must allege a breach of the CBA.  *See id.* at 179, 190 (remanding for consideration of declaratory relief after employer alleged four violations of the CBA by union); *see also Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998) ("'Suits for violation of contracts' under § 301(a) are . . . suits that *claim a contract has been violated*." (emphasis added)).  So, this declaratory request likewise isn't viable under § 301.

### 4.  Conclusion

In sum, though several of plaintiff's claims are completely preempted by the LMRA, none of those preempted claims are viable under § 301.  This conclusion is buttressed by plaintiff's response to the Union's preemption argument.  Instead of contesting the Union's position that plaintiff's claims fail on their merits under § 301, plaintiff doubled down on its position that its claims are not preempted.  Such posturing suggests what the court now holds: plaintiff's completely preempted claims aren't viable under § 301 of the LMRA.  *See Sayre v. United Steel Workers of Am*, No. 07-0787, 2010 WL 3810618, at *9 n.4 (S.D.W. Va. Sept. 23, 2010) (concluding that plaintiffs effectively conceded they couldn't state claim under LMRA when response to motion to dismiss was to reiterate that claims arose under state law).  The court thus dismisses plaintiff's completely preempted claims, granting defendants' Motions to Dismiss against plaintiff's unjust enrichment claim and all those claims asserted in ¶¶ 78, 80, 81, and 82 of the Petition.  *See Rivera v. Smith's Food & Drug Ctrs.*, No. CIV-05-1049-RB/ACT, 2006 WL 4891275, at *7 (D.N.M. Feb. 16, 2006) ("Dismissal without prejudice is the appropriate disposition for preempted claims where the complaint does not properly plead any claims under

the LMRA." (first citing *Allis-Chalmers*, 471 U.S. at 220–21; then citing *Garley*, 236 F.3d at 1215)).

The court recognizes that this result seems strange—the court denied plaintiff's Motion to Remand (Doc. 6) on a complete preemption basis under § 301 and then determined that plaintiff couldn't state a claim under § 301. *Cf. Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992) ("We are cognizant of the apparent paradox, inherent in our decision of this case, holding that section 301 of the LMRA bars a federal cause of action for tortious interference with contract, yet simultaneously preempts the identical state law cause of action."). But keep in mind that the court, to determine whether plaintiff stated a claim for a CBA violation, had to interpret the CBA. Because plaintiff alleged "duties and obligations" that sounded contractual in nature, and because the only source for contractual-like duties between the parties was the CBA, this result follows. The court had to interpret the CBA—granting it jurisdiction. But when it engaged in that interpretive task, the court concluded that plaintiff couldn't state a viable claim under § 301. And so, the court dismisses all the completely preempted claims.

## IV.     Remaining State Law Claims

### A.  Declining Jurisdiction

Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction[.]" Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). In "the usual case" when "all federal-law claims are

eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.  Also, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Our Circuit has emphasized the point.  It prefers that when a district court dismisses all federal claims, it typically should decline to exercise supplemental jurisdiction over state law claims.  *See I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1012 (10th Cir. 2024) ("The 'district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.'" (quoting *Foxfield Villa. Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020))).  But still, the decision is committed to the district court's sound discretion.  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004).

The court, recognizing its discretion, declines to exercise supplemental jurisdiction over plaintiff's surviving state law claims.  The court finds no compelling reasons to depart from our Circuit's general directive.  And the novel nature of plaintiff's claim under the Kansas Constitution suggests that Kansas state courts should get the first crack at it.  *See* 28 U.S.C. § 1367(c)(2) (instructing that district court may decline to exercise jurisdiction over "novel or complex issue[s] of State law").  The court thus concludes that a Kansas state court should resolve plaintiff's claims relying on Kansas law.

### B.  Dismiss or Remand

Having declined to exercise jurisdiction over the remaining state law claims, the court now has discretion to either dismiss those claims without prejudice or remand them to Kansas

state court.  *Barrow v. Kan. State Univ.*, No. 22-3266, 2023 WL 10101935, at *8 (10th Cir. Oct.

25, 2023) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 353); *see also I Dig Texas*, 98 F.4th at

1013 (affirming district court's remand of state law claims after district court declined to exercise

supplemental jurisdiction).  The Supreme Court has instructed that "a remand generally will be

preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has

expired before the federal court has determined that it should relinquish jurisdiction over the

case."  *Carnegie-Mellon Univ.*, 484 U.S. at 351–52.  And "[e]ven when the applicable statute of

limitations has not expired, a remand may best promote the values of economy, convenience,

fairness, and comity."  *Id.* at 353.

Here, plaintiff's surviving claims seek a series of declarations.  "But a request for a

declaratory judgment is not itself a cause of action."  *Merryfield v. Jordan*, 281 P.3d 598, 2012

WL 3171872, at *2 (Kan. Ct. App. 2012).  So, to determine whether the statute of limitations has

expired, the court needs to discern the underlying cause of action for declaratory relief.

Several surviving claims seek declarations under the Kansas Constitution's right-to-work

provision.  Doc. 1-1 at 16–17 (Pet. ¶¶ 69, 70, 76, 77).  While plaintiff's Petition doesn't cite it, a

Kansas statute provides a cause of action for violations of this constitutional provision.  Kan.

Stat. Ann. § 44-831 ("Any person who is aggrieved by any violation of the provisions of section

12 of article 15 of the constitution of the state of Kansas shall have a cause of action[.]").  Claims

for violating this statute have a one-year statute of limitations.  *Id.*  So, the court concludes that

plaintiff must have asserted its claims under the Kansas Constitution within one year of their

accrual.  It appears that more than a year has passed since plaintiff's cause of action accrued.  *See*

Doc. 1-1 at 14 (Pet. ¶ 63) (identifying April 2023 as the start of the contested KBT assessments).

So, if the court dismisses plaintiff's surviving claims, it might, in effect, extinguish some of

them.  Believing this is a decision that a Kansas state court should make, the court, instead, remands plaintiff's surviving claims to state court.  *See Carnegie-Mellon*, 484 U.S. at 351–52.[9]

## V.        Conclusion

Some of plaintiff's claims are completely preempted by § 301 of the LMRA.  So, this court's removal jurisdiction is proper, and the court denies plaintiff's Motion to Remand (Doc. 6).  Because some of plaintiff's claims are completely preempted under § 301 of the LMRA but because those preempted claims aren't viable under § 301, the court dismisses those claims without prejudice.  So, the court grants KBT's Motion to Dismiss (Doc. 11) in part, and the court grants the Union's Motion to Dismiss (Doc. 9) in part.  The court grants these motions (Doc. 9 & Doc. 11) against plaintiff's unjust enrichment claim and the claims in ¶¶ 78, 80, 81, and 82 of the Petition.  The court doesn't reach defendants' Motions to Dismiss plaintiff's remaining claims, so it denies those motions in part without prejudice to refiling in state court.  The court remands all other claims to state court.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Country Carpet, Inc.'s Motion to Remand (Doc. 6) is denied.

**IT IS FURTHER ORDERED THAT** defendant District Council 3 and Local Union 14, International Union of Painters and Allied Trades of Greater Kansas City and Vicinity's Motion

---

[9]        The court recognizes that this result may appear to contradict the court's denial of plaintiff's Motion to Remand (Doc. 6).  But it doesn't.  Plaintiff brought its Motion to Remand (Doc. 6) under 28 U.S.C. § 1447(c).  That statute requires district courts to remand cases if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  To reach the merits of defendants' Motions to Dismiss, the court had to find jurisdiction to hear this case.  But having now concluded that a handful of plaintiff's claims are preempted and cannot state a viable claim under federal law, only state law claims remain.  So, under 28 U.S.C. § 1367(c)(3), the court now remands the surviving state law claims to state court.  *See RMP Consulting Grp., Inc. v. Datronic Rental Corp.*, 189 F.3d 478, 1999 WL 617690, at *4 n.3 (10th Cir. 1999) (distinguishing between remand based on § 1447(c) and remand based on § 1367(c)(3)); *see also* Charles A. Wright et al., *Federal Practice and Procedure* § 3739 (Rev. 4th ed. 2024) (identifying remand after "the jurisdictionally sufficient claims have been eliminated" as distinct "vehicle" for remand from § 1447(c)).

to Dismiss (Doc. 9) and defendant Kansas Building Trades Open Health and Welfare Trust Fund, Trustees' Motion to Dismiss (Doc. 11) are granted in part and denied in part.  The court grants these motions against both plaintiff's unjust enrichment claim and the claims in ¶¶ 78, 80, 81, and 82 of the Petition.  The court denies these motions against plaintiff's remaining claims, without prejudice to refiling in the state court action to follow remand.

**IT IS FURTHER ORDERED THAT** the rest of plaintiff's remaining claims are remanded to Kansas state court.

**IT IS SO ORDERED.**

**Dated this 25th day of September, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
